# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **CLAYTON AND KAREN SULLIVAN,** ) ) ) | |
| Plaintiffs, ) ) | |
| ) | Civil Action Number: |
| **v.** ) ) | **2:09-cv-1308-AKK** |
| **SUNCOAST RV, INC.;** ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Defendant Suncoast RV, Inc.'s ("Defendant") Second Amended Motion for Summary Judgment. Doc. 45. For reasons stated fully below, the motion is GRANTED, in part, and DENIED in part.

## I.  PROCEDURAL HISTORY

Plaintiffs Clayton and Karen Sullivan ("Plaintiffs" or sometimes referred to by their individual names) filed their complaint, (doc. 1), on June 30, 2009, and their amended complaint, (doc. 15), on September 17, 2009, alleging that Defendant fraudulently suppressed and fraudulently misrepresented information regarding a camper it sold them. Doc. 15 at 10, 13. They also allege that Defendant breached the express warranty, the implied warranty of merchantability,

and violated the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 *et seq.*).  Doc. 15 at 14-16.

## II.  FACTS

Plaintiffs visited Defendant, a recreational vehicle dealer, around September 2, 2008, in search of a new travel trailer.  Doc. 58 at 2.  Defendant's salesman steered them towards trailers manufactured by Ameri-Camp, told them that an Ameri-Camp is the best fit for them for the price, and that Defendant would have a sale of "unheard of" prices in a month or two and to return in a few weeks to put down a deposit.  Doc. 58 at 2.  When Plaintiffs returned on September 6, 2008 to continue their search, they met with a different salesman who also steered them towards the Ameri-Camp trailer.  Doc. 58 at 2. When Plaintiffs asked about the sale of "unheard of" prices the first salesman mentioned, this salesman told them it had already started. *Id.* at 3.  As a result, Plaintiffs purchased an Ameri-Camp travel trailer, *id.* at 4, and Clayton Sullivan signed a "Purchase Agreement," which generally disclaimed all warranties, "express or implied," including the "implied warranty of merchantability" and stated that the trailer was sold "as is."  Doc. 47-1.

Prior to purchasing the trailer, one of Defendant's sales representatives informed Plaintiffs that "the Ameri-Camp was the best fit for [them, in that] it had

all of the amenities [they] were looking for . . . at a more affordable price." Doc. 48-3 at 13 (Dep. p. 48).  Another representative told them that (1) the Ameri-Camp was covered by a manufacturer's warranty, (*id.* at 29 (dep. p. 111)), (2) the undercarriage of the trailer was constructed with OSV board, (*id.* at 19 (dep. p. 69)), (3) the level of formaldehyde in the trailer met new and stricter federal standards, (*id.* at 22 (dep. p. 82)), and (4) that there were no problems with the trailer's slide-outs panels, (*id.* at 31 (dep. p. 120).  Still another representative told them that they "didn't need to worry about the warranty on the coach itself because . . . the way we construct them, you are not going to have a problem with the coach itself." Doc. 49-1 at 8 (Dep. p. 165).  Plaintiffs relied on these representations when they purchased the Ameri-Camp travel trailer for $73,514.95 or $80,000.  Doc. 15 at 7.

Unfortunately for Plaintiffs, they soon discovered that the undercarriage of the trailer was not constructed as Defendant described, (*id.* at 19 (dep. p. 69)), and that the trailer's formaldehyde levels did not meet the new federal standards, (doc. 49-1 at 14 (dep. p. 192)).  The formaldehyde levels were particularly important to Plaintiffs because of health issues they experienced due to high formaldehyde levels in a FEMA trailer they used after Hurricane Katrina.  Doc. 48-3 at 22 (Dep. p. 82-83).

Plaintiffs also experienced other problems that required repair work, including with the trailer's slide-out panels. *Id.* at 32 (Dep. p. 121). When they returned to Defendant a few weeks later for the repairs, they learned that Defendant was having difficulty obtaining parts from Ameri-Camp (even though the companies shared the same owner and management) and may have to get replacement parts from other trailers on its lot. *Id.* at 27 (Dep. p. 104).

Around October 15, 2008, Plaintiffs also learned that Ameri-Camp's manufacturer (RVME, hereinafter referred to by its trade name "Ameri-Camp") had gone out of business. *Id.* (Dep. p. 116). Plaintiffs contend that although they continued to have problems with their trailer, (doc. 49-1 at 8 (dep. p. 166-167)), Defendant told them "there was nothing that Suncoast could or was going to do concerning it, that it was [Plaintiffs'] trailer and that was the end to it" (*id.* at 19 (dep. p. 211-212), since Plaintiffs no longer have any manufacturer's warranty on the trailer.

Ameri-Camp manufactured trailers it sold to Defendant and other dealers around the country. Doc. 46 at 7. Its sole corporate member is RV Manufacturing, Inc., whose sole director is Fred S. Hassan, who is Defendant's majority owner. *Id.* In addition, Defendant and RV Manufacturing share the same officers: Mike Zemylak, Tracy Hassan Goodwin, and Salem Hassan. *Id.* Despite

the connection between the two companies, Defendant is apparently refusing to honor the Ameri-Camp warranty.

### III.  LEGAL STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial."  *Id.* at 324 (internal citations and quotations omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must construe the evidence in the light most favorable to the nonmoving party.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

## IV.  LEGAL ANALYSIS

**A.     A dispute of fact exists on the Magnuson-Moss Warranty Act claim.**

Defendant contends that dismissal is warranted on Plaintiffs' Magnuson-Moss Warranty Act claim because it is not a "warrantor" as defined by the Act.[1] Doc. 46 at 12.  While this may be the case, as a seller, Defendant is still obligated to furnish a copy of the written warranty to Plaintiffs.  *See* 16 C.F.R. § 702.3(a)(1)-(2) (1987).  Plaintiffs contend that Defendant failed to give them a copy of the warranty.  If Plaintiffs are correct, then Defendant may have violated the Act.[2]  Accordingly, summary judgment is denied.

**B.     Plaintiffs have alleged a cognizable fraudulent misrepresentation claim.[3]**

---

[1] The Act defines "warrantor" as "any supplier or other person who gives or offers to give a <u>written</u> warranty or who is or may be obligated under an implied warranty." 15 U.S.C. § 2301(5) (emphasis added).  An "implied warranty" is a "warranty arising under State law . . . in connection with the sale by a supplier of a consumer product."  15 U.S.C. § 2301(7).  Here, the manufacturer, rather than Defendant, issued the written warranty. *See* Doc. 58 at 4.

[2] In so stating, the court makes no determination on Defendant's argument disputing the ability of 15 C.F.R. § 702.3 to effectively assign liability to a seller when the Act does not.

[3] Defendant argues that to find it had knowledge of the facts Plaintiffs allege it suppressed or misrepresented, the court must pierce Defendant's corporate veil and impute Ameri-Camp's knowledge to it.  The court does not need to reach the corporate veil piercing issue because Plaintiffs have alleged facts that suggest Defendant may have had independent knowledge of Ameri-Camp's imminent demise. *See* Doc. 58 at 6-9.  To prevail at trial, Plaintiffs will, of course, have to prove either Suncoast's independent knowledge of each fact it allegedly misrepresented or that the two companies are one.

Plaintiffs contend that Defendant fraudulently misrepresented that: (1) the trailer's formaldehyde levels met the newer and more restrictive federal standard; (2) the bottom of the trailer was covered with solid sheets of OSV board instead of wooden framework covered in plastic; (3) Plaintiffs' trailer was covered by the factory warranty; (4) the Ameri-Camp trailer offered the same benefits of its competitors; and (5) "nothing ever went wrong with the coach." Doc. 15 at 13-14. To prevail, Plaintiffs need to show a "(1) misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) which was justifiably relied on by the plaintiff under the circumstances, and (4) which caused damage as a proximate consequence." *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 422 (Ala. 1997); *see also* ALA. CODE § 6-5-101 (1975).

Defendant asserts summary judgment is warranted on the fraudulent misrepresentation claim because the written purchase agreement that Plaintiffs signed contained conspicuous language that contradicted any oral misrepresentation Defendant's representatives made and, as such, Plaintiffs cannot claim that they reasonably relied on them. Doc. 46 at 13-14. Stated differently, Defendant contends that the written purchase agreement nullified whatever representations its salesmen may have made to entice Plaintiffs to purchase the trailer.

Notably, the cases Defendant relies on are distinguishable.  First, Defendant cites to *Locklear Dodge City, Inc. v. Kimbrell*, 703 So. 2d 303 (Ala. 1997), which states that "a [consumer] cannot recover for misrepresentation where the [consumer] has signed a disclosure statement revealing the possibility of the kind of damage the [consumer] alleges was suppressed."[4]  *Id.* at 305.  In *Locklear*, the plaintiff claimed fraudulent suppression and misrepresentation because the defendant's salesman told her that "to the best of his knowledge" the automobile she planned to purchase had no prior wrecks, when in fact, the car had two.  *Id.* at 304.  However, the plaintiff signed a disclosure statement informing her that the car "MAY HAVE UNDISCLOSED MECHANICAL OR BODY REPAIRS OR MAY HAVE BEEN INVOLVED IN ACCIDENTS." *Id.* at 305. Thus, the court held that plaintiff "knowingly and intelligently acknowledged that she had been informed" of the possibility of prior accidents.  *Id.*  In other words, the plaintiff in *Locklear* signed a document that clearly and specifically refuted the alleged untruth that the salesman told her.  She asked about wrecks, was told the car had none, but then signed a document that clearly stated that the car may have been wrecked.  *See id.*

---

[4] The court notes that while Defendant cites to *Locklear* to support its argument that Plaintiffs' misrepresentation claim fails, the court's opinion in that case only speaks to the plaintiff's suppression claim.  *See Locklear*, 703 So. 2d at 304-05.

Here, based upon the evidence before this court, unlike *Locklear*, Plaintiffs signed no document that specifically refuted the following alleged misrepresentations by Defendant: (1) that the formaldehyde levels met the newer and more restrictive standard; (2) that the bottom of the trailer was covered with solid sheets of OSV board instead of wooden framework covered in plastic; (3) that Plaintiffs' trailer was covered by the factory warranty; (4) that the Ameri-Camp trailer offered the same benefits of its competitors; and (5) that "nothing ever went wrong with the coach." Doc. 15 at 13-14.  Consequently, Defendant's reliance on *Locklear* is misplaced.

The oral statements and subsequent written disclaimers in this case are more analogous to those in *La Trace v. Webster*, 17 So. 3d 1210 (Ala. Civ. App. 2008), where the plaintiff purchased "Tiffany" lamps based on oral representations that the lamps were authentic. *Id.* at 1212-13.  The plaintiff signed disclaimers that stated that the lamps were sold "AS IS WHERE IS," and that the defendant made no "guarantees, warranties or representations, express or implied, with respect to the . . . authenticity of authorship," and "NO statement anywhere, whether oral or written, shall be deemed such a guarantee, warranty or representation." *Id.* at 1213.  The appeals court reversed the trial court's summary judgment on the plaintiff's misrepresentation, breach of warranty, and breach of contract claims,

holding that the defendant's representation of the authenticity of the Tiffany lamps were part of the "core description" of the product that induced the purchase, and as such, could not be abrogated by the defendant's written general disclaimers. *Id.* at 1219.

Similarly, Plaintiffs here have testified that Defendant's salesmen represented that the trailer was manufactured with the lower formaldehyde levels, (doc. 48-3 at 22 (dep. p. 82)), and that representation, at least in part, led them to purchase the trailer. Doc. 58 at 3. None of Defendant's written disclaimers specifically refute this point, and its blanket warranty disclaimers, (doc. 46 at 3-4), are insufficient to satisfy its summary judgment burden on this issue. Accordingly, Defendant's motion on the fraudulent misrepresentation claim is denied.

**C.      Plaintiffs have sufficiently alleged fraudulent suppression under Alabama law, and Defendant owed Plaintiffs a duty of disclosure.**

Plaintiffs contend that Defendant suppressed that: (1) Ameri-Camp would soon cease operation, (2) Ameri-Camp's warranty "was essentially worthless," (3) it would prove difficult or impossible to obtain repairs after Ameri-Camp ceased operations, (4) Defendant pushed the sale of Ameri-Camp trailers, instead of other manufacturers, to minimize the losses that Defendant, Ameri-Camp, and their owners would suffer, and (5) the trailer was not manufactured under the new and

stricter formaldehyde guidelines and, in fact, contained high levels of formaldehyde. Doc. 15 at 11. Defendant disagrees and counters that it has no liability for a suppression claim because (1) the written purchase agreement Plaintiffs signed was contrary to the facts Defendant allegedly suppressed, and (2) because Plaintiffs cannot pierce Defendant's corporate veil to impute Ameri-Camp's knowledge to Defendant.[5] Doc. 46 at 13, 17.

The elements of a suppression claim are: "(1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury." *Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C.*, 932 So. 2d 883, 891 (Ala. 2005) (internal quotations and citations omitted). "The question whether a party had a duty to disclose is a question of law to be determined by the trial court." *Id*. The court must consider: "(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiffs' opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances." *Id.* "[T]he types of relationships wherein a duty to disclose has been found indicate that the Alabama

---

[5] As stated in note 2, *supra*, the court does not have to reach the corporate veil issue because Plaintiffs have alleged sufficient facts to suggest that Defendant may have had independent knowledge of the decision to cease production of Ameri-Camp trailers.

courts give little attention to the designation of the relationship, such as vendor-vendee, etc., but instead look to the relative bargaining positions of the parties." *Ellis v. Zuck*, 409 F. Supp. 1151, 1157 (N.D. Ala. 1976).  For example, the *Ellis* court concluded that the defendant had a duty to disclose material facts regarding the parties' franchise agreement because:  (1) "the parties were not dealing at arm's length, but there existed a disparity of position which under the circumstances created a duty to disclose, and (2) the plaintiffs raised several questions to which defendants responded, and which required further disclosure." *Id.* at 1158.  Moreover, "even though one is under no obligation to speak as to a matter, if he undertakes to do so, either voluntarily or in response to inquiry, he is bound not only to state the truth, but also not to suppress or conceal any facts within his knowledge that will materially qualify those stated: if he speaks at all, he must make a full and fair disclosure." *Id.*

     First, as discussed in section B, *supra*, Defendant's general written disclaimers in the purchase agreement do not preclude it from liability regarding its representatives' alleged specific oral misrepresentations or suppression. *See La Trace*, 17 So. 3d at 1219.  For the same reasons, the suppression claim survives summary judgment too, provided that a duty to disclose exists. *See Ellis*, 409 F. Supp. at 1151 (in addition to the elements for fraudulent misrepresentation, to

allege fraudulent suppression, a plaintiff must show a duty to disclose); *Freightliner*, 932 So. 2d at 891 ("The question whether a party had a duty to disclose is a question of law to be determined by the trial court.").

As to whether a duty to disclose existed in this case, the *Freightliner* case that Defendant relies on is distinguishable because the parties were both commercial entities involved in an arms-length transaction. *See Freightliner*, 932 So. 2d at 892 n.13 (internal quotations and citations omitted) (explaining that the court viewed this as a commercial, rather than consumer transaction). Here, the parties' "disparity of position" and the Plaintiffs' consumer status argue in favor of Defendant's duty to disclose. *See Ellis*, 409 F. Supp. at 1158; *see also* Ala. Code § 7-1-201 (defining "consumer" as "an individual who enters into a transaction primarily for personal, family, or household purposes"); ALA. CODE § 7-2-104 (1975) official comment (recognizing that the standard of dealing between merchants differs between the standard of dealing between merchants and consumers). Moreover, as in *Ellis*, Plaintiffs raised several questions to which Defendant responded (for example, the formaldehyde levels, the nature of the flooring, the quality of Ameri-Camp versus other trailers), and Defendant volunteered information (the nature of the Ameri-Camp warranty, the quality of Ameri-Camp trailers relative to other manufacturers) that this court finds gave rise

to a duty to disclose. *See Ellis*, 409 F. Supp. at 1158. Furthermore, Plaintiffs alleged that Defendant's sales employees made references to an upcoming huge sale of Ameri-Camp trailers, which creates a factual issue as to whether Defendant may have known about Ameri-Camp's financial issues and pending dissolution. Doc. 58 at 2-3. If, as Plaintiffs allege, Defendant had independent knowledge of additional facts that "materially qualif[ied]" the facts it stated, then Defendant may be liable for fraudulent suppression. *Id.* Accordingly, Defendant's motion for summary judgment on the fraudulent suppression claim is denied.

**D.     Plaintiffs have sufficiently alleged a claim of breach of express warranty under Ala. Code § 7-2-313.**

Defendant argues that because it disclaimed all warranties in the purchase agreement, and because Plaintiffs cannot pierce the corporate veil and make it liable for Ameri-Camp's factory warranty, Plaintiffs' breach of express warranty claim must fail. Doc. 46 at 11, 17. Under Alabama law, a seller creates an express warranty by "(a) any affirmation of fact or promise made . . . which relates to the goods and becomes part of the basis of the bargain . . . (b) any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Ala. Code. § 7-2-313. A general or "as is" disclaimer "cannot defeat an express oral warranty." *Gable v. Boles*, 718

So. 2d 68, 71 (Ala. Civ. App. 1998) (holding that an "as is" disclaimer did not defeat seller's oral express warranty that boat was "winterized.").

Plaintiffs alleged that Defendant made representations regarding the construction of the undercarriage of the trailer, (doc. 48-3 at 19 (dep. p. 69)), the level of formaldehyde in the trailer, (*id.* at 22 (dep. p. 82)), that the manufacturer's warranty would cover the trailer, (*id.* at 29 (dep. p. 111)), and that there were no problems with the trailer's slide-outs (*id.* at 31 (dep. p. 120).   These allegations are the type of representations that courts have found establish express warranties that a dealer cannot disclaim with "as is" agreements like the one Plaintiffs signed. *See Gable v. Boles*, 718 So. 2d at 71.  Accordingly, Plaintiffs sufficiently alleged facts to create an issue of fact and survive the motion for summary judgment on the breach of an express warranty claim.

E.   **Defendant effectively disclaimed any implied warranties under Alabama law.**

Defendant contends that because it disclaimed all warranties in the purchase agreement, Plaintiffs' breach of implied warranty of merchantability claim must also fail.  Doc. 46 at 11.  Under Alabama law, an implied warranty of merchantability exists if the product would not "pass without objection in the trade under the contract description . . . [and is not] fit for the or for the ordinary

purposes for which such goods are used." A<small>LA</small>. C<small>ODE</small> § 7-2-314(2)(a), (c) (1975). A seller may effectively disclaim the implied warranty of merchantability by stating conspicuously and in writing that the "implied warranty of merchantability" is disclaimed, or that the product is sold "as is" or "with all faults" or "other language . . . [that] makes plain that there is no implied warranty." A<small>LA</small>. C<small>ODE</small> § 7-2-316 (1975).

The purchase agreement that Plaintiffs signed clearly stated that the trailer was sold "as is" with no "implied warranty, including any implied warranties of merchantability or fitness." Doc 47-1 at 3. Accordingly, Defendant properly disclaimed any implied warranties as to the trailer and is due summary judgment on the breach of implied warranty claim.

## V.  CONCLUSION

For reasons stated above, Defendant's motion for summary judgment is GRANTED as to Plaintiffs' implied warranty of merchantability claim and DENIED in all other respects.

DONE and ordered this 13th of September, 2010.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE